UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOSIE W MULLINAX, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:14-cv-01352-TWP-MJD |
| | ) |
| CAROLYN W. COLVIN, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Josie Mullinax ("Mullinax") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3). For the reasons set forth below, the Magistrate Judge recommends that the decision of the Commissioner be **AFFIRMED.**

**I.   Background**

Mullinax filed her applications for DIB and SSI on April 27, 2011, alleging March 31, 2010 as the onset date of her disability. [R. at 264.] In her applications, Mullinax alleged disability due to degenerative disc disease, Graves' disease, hypertension, anxiety, depression, chronic pulmonary insufficiency, incontinence with prolapsed bladder, dropped foot syndrome, and obesity.[1] [R. at 292.] Mullinax's applications were denied initially on September, 9, 2011

---

[1] Mullinax recited the relevant factual and medical background in his opening brief. [*See* Dkt. 15.] The Commissioner, unless otherwise noted herein, does not dispute these facts. [*See* Dkt. 20.] Because these facts

1

and upon reconsideration on November 18, 2011. [R. at 133, 143.] Mullinax timely requested a hearing on her applications, which was held before Administrative Law Judge David Welch ("ALJ") on October 25, 2012. [R. at 62.] On March 23, 2013, the ALJ issued a fully favorable decision awarding DIB and SSI benefits to Mullinax. [R. at 111.] On September 10, 2013, the Appeals Council vacated the decision, and remanded the case back to the ALJ for reconsideration. [R. at 123.] After conducting a second hearing, the ALJ issued his decision denying Mullinax's application for DIB and SSI on January 8, 2014. [R. at 9.] On July 1, 2014, the Appeals Council denied Mullinax's request for review, making the ALJ's decision the final decision for the purposes of judicial review. [R. at 1.] Mullinax timely filed her Complaint with this Court on August 18, 2014, which Complaint is now before the Court.

## II.  Legal Standard

To be eligible for DIB or SSI, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that

---

involve Mullinax's confidential and otherwise sensitive medical information, the Court will incorporate by reference the factual background in the parties' briefs and articulate specific facts as needed below.

[2] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI.  However, separate, parallel statutes and regulations exist for Disability Insurance Benefits and Supplemental Security Income claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provisions as context dictates.  The same applies to citations of statutes and regulations found within cited court decisions.

significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and she is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three and either cannot perform her past relevant work or has no past relevant work but she can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before proceeding from step three to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"), identifying the claimant's functional limitations and assessing the claimant's remaining capacity for work-related activities. S.S.R. 96-8p.

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (citing *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985); *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984)). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). To be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every

piece of evidence or testimony," he must "provide some glimpse into his reasoning" and "build an accurate and logical bridge from the evidence to his conclusion." *Dixon*, 270 F.3d at 1176.

### III.   The ALJ's Decision

In his decision, the ALJ first determined that Mullinax met the insured status requirements of the Act through March 31, 2015 and has not engaged in substantial gainful activity since March 30, 2010. [R. at 15.] At step two, the ALJ found that Mullinax had the severe impairments of bladder prolapse, obesity, substance addiction disorder (cannabis), and medically unsupported prescribed narcotics. [*Id.*] However, at step three the ALJ found that Mullinax does not have an impairment that meets or medically equals a Listing by evaluating the following: Section 1.00Q, 3.00I, and 4.00I for obesity; Section 12.09 for her substance abuse addiction, and Section 6.00 for her bladder prolapse. [R. at 19.]

At step three but before step four, the ALJ, after "careful consideration of the entire record," determined that Mullinax has the RFC to perform "light work" with the following additional limitations:

> [L]ifting up to twenty pounds occasionally and lifting or carrying up to ten pounds frequently as defined in the regulation; never operating foot controls with the left lower extremity; never climbing ladders, ropes, scaffolds, crouching or crawling but occasionally climbing ramps, stairs, balancing, stooping, kneeling; never exposed to extreme cold, heat, wetness, humidity, unprotected heights, using moving machinery or exposed to pulmonary irritants such as odors, dust, fumes, gases; however, this individual would require bathroom access.

[*Id.*]  Having made this RFC assessment, the ALJ found at step four that Mullinax is able to perform her past relevant work as a bartender, informal waitress, and cashier. [R. at 24.] Based on these findings, the ALJ concluded that Mullinax is not disabled, as defined by the Social Security Act. [R. at 25.]

## IV.  Discussion

On appeal, Mullinax argues that the ALJ erred in two ways. First, she contends that the ALJ erred by not adequately considering Mullinax's incontinence when determining her RFC and her ability to perform her past relevant work. [Dkt. 15 at 12-15.] Second, Mullinax argues that the ALJ erred when he based his decision on Mullinax's noncompliance with treatment recommendations. [Dkt. 15 at 15-18.]

### A.  Mullinax's Incontinence

In his RFC assessment, the ALJ wrote that Mullinax "would require bathroom access." [R. at 19.] The ALJ later clarified that "[b]athroom access refers merely to proximity." [R. at 21.] Mullinax argues that the ALJ failed to consider the "unpredictable" nature of her incontinence in his RFC assessment. [R. at 12-14.] If he had, Mullinax argues, the ALJ would have found that she could not perform any available work. [*Id.*] Because the ALJ had substantial evidence to conclude that Mullinax's incontinence was not "unpredictable," the Court finds that the ALJ did not err.

The ALJ concluded that there was no objective medical evidence in the record to support the argument that Mullinax's incontinence was as "unpredictable" as she claimed. [R. at 20.] He noted that, while Mullinax had a pessary device in 2009 to help with her incontinence, by 2012 she was no longer using the device. [R. at 20.] Furthermore, Mullinax was referred to a gynecologist in 2012, but there is no evidence that she attended the appointment. [*Id.*] Finally, the ALJ surveyed the medical opinion evidence in the record and none of it indicated that Mullinax has any work-related restrictions because of her incontinence. [*See* R. at 20-22.] Thus, there was no objective medical evidence in the record to support Mullinax's assertion that

incontinence required her to use the bathroom at "unpredictable" times.[3] *Spencer v. Astrue*, No. 4:09-CV-127-WGH-RLY, 2010 WL 3447524, at *6 (S.D. Ind. Aug. 30, 2010) ("Because there is no evidentiary support for such frequent restroom visits, the ALJ did not err by failing to include this limitation in his hypothetical questions to the VE.")

Furthermore, the ALJ cited to the testimony of medical expert Dr. John E. Pella ("Dr. Pella") in support of his RFC assessment regarding Mullinax's bathroom needs. [R. at 21.] The ALJ explained that he gave Dr. Pella's medical opinion great weight due to his medical specialty, thorough analysis, experience as an independent and objective medical expert, and knowledge of the Social Security disability program. [R. at 21.] Dr. Pella testified that Mullinax would not need bathroom access on an "ad lib" basis. [R. at 47.] He went on to clarify that "[s]he has to have a bathroom nearby to use, but she doesn't – it's not that she has to run to the bathroom on an urgent basis." [*Id.*] This testimony supports the ALJ's finding that mere proximity to a bathroom would sufficiently account for Mullinax's incontinence.

Thus, there is no objective evidence in the record to support a finding that Mullinax's incontinence was urgent or unpredictable. Furthermore, Dr. Pella's testimony supports the ALJ's RFC assessment regarding Mullinax's bathroom needs. Finally, as discussed below, the ALJ had substantial evidence to discount Mullinax's testimony regarding the intensity, persistence, and limiting effects of her incontinence. Thus, the ALJ adequately addressed Mullinax's incontinence in his RFC assessment.

---

[3] The Court also notes that Mullinax does not contest in her briefs that there is no objective evidence in the record regarding the "severity" of her incontinence. [*See* Dkt. 15 at 11-14; Dkt. 21 at 2-3 ("Defendant also demands that there be objective corroboration that Mullinax requires the number of bathroom breaks at unpredictable times that she alleges. It is unclear exactly what objective testing could possibly confirm this.").]

### B. Credibility Determination

Mullinax also argues that the ALJ erred by basing his denial on Mullinax's failure to follow prescribed treatment when Mullinax had a "good reason" for failing to follow it. *See* 20 C.F.R. § 404.1530. However, the ALJ did not **base** his decision on Mullinax's failure to follow prescribed treatment. Rather, the ALJ examined the "types of treatment received and medication taken" when determining **Mullinax's credibility**. *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (quoting 20 C.F.R. § 404.1529(c) (2)-(4)).

The ALJ concluded that Mullinax's impairments could reasonably be expected to cause her alleged symptoms, but that Mullinax's statements regarding the intensity, persistence, and limiting effects of her incontinence were not credible. [R. at 20.] In assessing a claimant's credibility when the allegedly disabling symptoms are not objectively verifiable, an ALJ must first determine whether those symptoms are supported by medical evidence. *See* SSR 96–7p, 1996 WL 374186, at *2; *Arnold v. Barnhart,* 473 F.3d 816, 822 (7th Cir. 2007). If not, SSR 96–7p requires the ALJ to "consider the entire case record and give specific reasons for the weight given to the individual's statements." *Simila*, 573 F.3d at 517 (quoting SSR 96–7p). The ALJ "should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and 'functional limitations.'" *Id.* (quoting 20 C.F.R. § 404.1529(c) (2)-(4)). An ALJ's credibility determination will not be overturned unless it is "patently wrong." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The ALJ's credibility determination regarding the intensity, persistence, and limiting effects of the Mullinax's incontinence was not patently wrong.

Mullinax reported that she suffers from urinary incontinence and wears a diaper all of the time due to unpredictable accidents. [R. at 420.] Furthermore, Mullinax testified that she has to change clothes at least once per day due to these accidents. [R. at 23.] However, the ALJ noted that Mullinax was no longer using the pessary device that she had received in 2009 to help control her incontinence. [R. at 20]. Additionally, although Mullinax currently takes medication for her other impairments, she does not take any medication for her incontinence, despite alleging serious symptoms. [R. at 22.] Finally, he noted that Mullinax claimed that she is being treated at an incontinence clinic, but there were no records from the clinic to support that assertion. [*Id.*] Thus, Mullinax's treatment history undermined her assertions regarding the severity of her incontinence.

Additionally, the ALJ considered Mullinax's behavior and demeanor at the second hearing when assessing her credibility. An ALJ's observations of a claimant's behavior and demeanor during a hearing are "'credibility determinations and are entitled to considerable weight.'" *Kelley v. Sullivan*, 890 F.2d 961, 964 (7th Cir. 1989) (quoting *Whitney v. Schweiker,* 695 F.2d 784, 788 (7th Cir.1982)). The ALJ stated that Mullinax's behavior and testimony regarding her incontinence appeared "melodramatic" and "exaggerated." [R. at 23.] He further noted that Mullinax claimed that she had been prescribed an oxygen tank as treatment for her asthma and chronic pulmonary insufficiency, but that she did not have the tank at the hearing and did not appear to experience any shortness of breath. [*Id.*] Instead, Mullinax's claim that she had to pull the oxygen tank with her **right** hand "was unreasonable, unjustified, and appeared to be stretching to qualify for benefits, particularly in light of Dr. Pella's opinion that her asthma and COPD do not justify a treatment of oxygen." [*Id.*] Thus, the ALJ's observations of Mullinax's behavior and testimony at the hearing also undermine Mullinax's credibility. *Diaz v. Chater*, 55

8

F.3d 300, 307 (7th Cir. 1995) ("The ALJ was entitled to make a credibility determination and conclude that the extent of [the claimant's] impairment was exaggerated.").

In sum, the ALJ did not base his decision on Mullinax's failure to take treatment, but rather used that information as part of his credibility determination when assessing Mullinax's RFC. The ALJ then determined, based upon his RFC assessment, that Mullinax is capable of performing her past relevant work. [*See* R. at 19-25.] An ALJ may use noncompliance with recommended treatment to determine a claimant's credibility without running afoul of 20 C.F.R. § 404.1530. *Atkinson v. Astrue*, No. 1:11-CV-01280-DML-TWP, 2013 WL 1048570, at *6 (S.D. Ind. Mar. 14, 2013); *Mullins v. Colvin*, No. 1:13-CV-1090-JMS-MJD, 2014 WL 2439672, at *5 (S.D. Ind. May 29, 2014); *see also Rousey v. Heckler*, 771 F.2d 1065, 1069-70 (7th Cir. 1985). Because the ALJ properly used evidence of Mullinax's failure to seek treatment as one factor in his credibility determination, the ALJ did not err.

### V. Conclusion

For the aforementioned reasons, the decision of the Commissioner should be **AFFIRMED**. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: 26 OCT 2015

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov